### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GS HOLISTIC, LLC, <br><br> Plaintiff, <br><br> v. <br><br> NEW PARADISE INC d/b/a NEW PARADISE STORE, and SURENDRA PRADHAN, <br><br> Defendants. | Case No. 2:25-cv-02609-NJC-JMW <br><br><br> **RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO VACATE DEFAULT JUDGMENT** |

Plaintiff GS Holistic, LLC, by and through its undersigned counsel, responds in opposition to Defendants' Motion to Vacate Default Judgment (ECF No. 30).[1] In opposition to the motion, GS Holistic submits the following:

### Introduction

Defendants fail to satisfy the stringent standards required to vacate a default judgment under Rule 60(b), as the record demonstrates that Defendants had actual notice of this action for months prior to the entry of judgment, chose not to appear or defend, and now seek to relitigate the merits and amount of the judgment after a default judgment was entered against them. Rather than establishing that the default was not willful (or that it resulted from excusable neglect), presenting a meritorious defense, or showing the GS Holistic would not be unduly prejudiced by vacatur, Defendants attempt to minimize their admitted sale of a counterfeit STÜNDENGLASS-branded product and improperly recast disagreements regarding the Court's damages award as "fraud" or "misrepresentation."

---

[1] Strictly speaking, Defendants did not file a formal motion. Rather, the lead document docketed at ECF No. 30 was a proposed order to show cause, accompanied by a memorandum of law, two declarations, and two exhibits.

Defendants' unsupported allegations concerning service of process and settlement communications likewise do not justify the extraordinary relief they seek. Because Defendants cannot establish that their default was not willful or the product of excusable neglect, present a meritorious defense, or otherwise demonstrate grounds warranting relief from judgment, their motion should be denied in its entirety.

**Legal Standard**

The Second Circuit has established a three-factor test that guides district courts when deciding motions to vacate default judgments under Rule 60(b). These three factors are: "(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). "Of these factors, willfulness carries the most weight. Moreover, a district court has discretion to deny a motion to vacate if it is persuaded that the default was willful and is unpersuaded that the defaulting party has a meritorious defense. In such cases, any absence of prejudice to the non-defaulting party is not dispositive." *Aquila Alpha LLC v. Ehrenberg (In re Orion HealthCorp, Inc.)*, 95 F.4th 98, 104 (2d Cir. 2024) (cleaned up).

**Argument**

Defendants offer a scattershot array of reasons to vacate the default judgment that are at time difficult to follow, internally inconsistent, or legally wrong, GS Holistic will address each in turn within the framework of the applicable three-factor test.

**I. Defendants' default was willful and not the result of excusable neglect.**

Defendants seem to argue that relief is warranted under Rule 60(b)(1) which provides relief from a final judgment based on "[m]istake, inadvertence, surprise, or excusable neglect." *See* ECF No. 30-5 (hereafter "Defs.' Mem.") at 6. But Defendants devote only a few sentences to this

contention and never clearly identify what "mistake," "surprise," or "excusable neglect" supposedly prevented them from appearing and defending this action. Instead, Defendants offer a shifting and internally inconsistent narrative that ultimately confirms they had actual notice of the litigation and simply chose not to participate.

The record demonstrates there was no mistake, inadvertence, or surprise here. By Defendants' own admission, they became aware of this lawsuit no later than October 16, 2025—two months before default judgment was entered on December 22, 2025. *See* ECF No. 30-1 at ¶ 25 (Mr. Pradhan admitting he received the motion for default judgment in October 2025); ECF No. 30-3 at ¶¶ 20-21 (Defendants' Attorney admitting the same).[2] Defendants further admit that they received Plaintiff's motion for default judgment and thereafter engaged in communications with Plaintiff's counsel regarding the lawsuit and possible settlement. *Id*. The emails attached to Defendants' motion confirm that Defendants knew the exact case number, understood that litigation had been filed against them, and sought "to discuss about settlement as early as possible" and "resolve the issue." ECF No. 30-4 at 2, 4.

Despite possessing actual notice of both the lawsuit and the pending motion for default judgment, Defendants consciously chose not to appear, retain counsel, answer the Complaint, request an extension, or otherwise participate in the litigation. Their decision to pursue informal settlement discussions instead of appearing in the action does not constitute excusable neglect. *See Gesualdi v. Reid*, No. 14-cv-4212(ADS)(GRB), 2017 U.S. Dist. LEXIS 27063, at *16 (E.D.N.Y. Feb. 27, 2017) (citing cases holding that engaging in settlement discussions rather than taking affirmative actions to avoid a default judgment does not constitute excusable neglect); *United States v. Cejas*, No. 3:03cv1720 (JBA), 2005 U.S. Dist. LEXIS 1462, at *3-4 (D. Conn. Feb. 3,

---

[2] It's not clear how Attorney Beckerman would have personal knowledge of this.

2005) (holding that defendants' conduct "must be deemed willful" under a Rule 60(b)(1) analysis when they "acknowledge[d] that they were aware of the claim against them and had entered into unsuccessful settlement negotiations with the plaintiff" without filing an answer or otherwise appearing).

Defendants' remaining explanations fare no better. Defendants claim that an attorney solicitation letter marked "Attorney Advertising" initially caused confusion and that Mr. Pradhan is unfamiliar with American legal procedure. ECF Nos. 30-1 at ¶¶ 34-35; 30-3 ¶¶ at 17-19.[3] But even accepting those assertions as true, they do not explain Defendants' continued inaction after admittedly receiving the motion for default judgment and engaging in direct discussions concerning the case itself. Nor does unfamiliarity with the legal system excuse a months-long failure to appear after obtaining actual notice of federal litigation. *See State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 177 (2d Cir. 2004) ("where a party fails to act with diligence, he will be unable to demonstrate that his conduct constituted 'excusable neglect' . . . [h]ence, when a party demonstrates a lack of diligence in defending a lawsuit, a court need not set aside a default judgment"). This is particularly true with respect to Defendant New Paradise Inc., which, as a corporate entity, could only appear through licensed counsel. Nor do Defendants cite any authority suggesting that ongoing settlement communications suspend a litigant's obligation to timely appear and respond in federal court. Moreover, no explanation is given for the four-month delay between the entry of the judgment in December 2025 and seeking to vacate it at the end of April 2026. *See Guthrie v. Rainbow Fencing Inc.*, 349 F.R.D. 55, 69 (E.D.N.Y. 2025) (that Defendants lacked notice of the action until December 2023, as Mr. Burge's Declaration states,

---

[3] Again, it's not evident how Attorney Beckerman personally knows Mr. Pradhan's education or his state of mind at the time when he received the numerous court filings indicating Defendants were in default.

-4-

the nearly three-month delay in moving to vacate still weighs in favor of finding a willful default.").

Defendants also attempt to shift responsibility to Plaintiff's counsel by claiming they were "given the impression" that settlement discussions could resolve the matter and that Plaintiff's counsel did not advise them to retain counsel. ECF Nos. 30-1 at ¶¶35-36; 30-3 at ¶¶ 21-23. That argument is meritless. Plaintiff's counsel had no obligation to provide legal advice to adverse parties or warn them of the consequences of failing to defend the case against them. *See Colburn Family Found. v. Chabad's Children of Chernobyl*, 739 F. Supp. 2d 614, 623 (S.D.N.Y. 2010) ("While a lawyer may advise an unrepresented adverse party to secure counsel, there is no requirement that the lawyer must provide such advice.").

Lastly, Defendants' conclusory assertion that they were never served likewise does not establish excusable neglect or otherwise warrant vacatur. Defendants do not meaningfully address—let alone rebut—the affidavits of service filed on the docket, *see* ECF Nos. 11 and 12, instead offering only a bare denial of service unsupported by any factual detail or evidentiary showing. *See De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) (affirming trial court's refusal to vacate default judgment and holding that a defendant's conclusory assertion of non-service, without factual detail or evidentiary support, does not warrant vacatur of a default judgment because a process server's sworn affidavit creates a presumption of proper service, and a defendant's affidavit denying service only rebuts this presumption and necessitates an evidentiary hearing if the defendant swears to specific facts that directly contradict the process server's affidavit).

In short, the record establishes that Defendants had actual notice of this action, understood the basic nature of the claims against them, and deliberately failed to defend the case. Their default was therefore willful and not the result of mistake, inadvertence, surprise, or excusable neglect.

## II. Defendants fail to present a meritorious defense.

Defendants likewise fail to present a meritorious defense sufficient to justify vacatur. To satisfy this requirement, a defendant must present specific facts that, if proven at trial, would constitute "a complete defense" to the claims asserted. *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993)). Conclusory denials and attempts to minimize the alleged misconduct are insufficient. *See Guthrie*, 349 F.R.D. at 69-70.

Here, Defendants do not deny selling a counterfeit STÜNDENGLASS-branded product. To the contrary, Defendants expressly admit that an individual entered the store, selected the product, and purchased it for $344.00 using a credit card. ECF Nos. 30-1 at ¶ 2-17; 30-3 at ¶ 9. Defendants further admit that additional STÜNDENGLASS-branded products were present in the store at the time. ECF Nos. 30-1 at ¶ 3. These admissions directly support, rather than undermine, Plaintiff's counterfeiting and infringement claims.

Instead of offering a cognizable defense, Defendants attempt to minimize their conduct by arguing that the product was not actively advertised or displayed and that the investigator initiated the purchase. But trademark infringement and counterfeiting liability do not require extensive advertising, marketing campaigns, or repeated sales. Nor is liability negated merely because a customer requested to purchase the counterfeit product. Defendants cite no authority suggesting otherwise.

Defendants' arguments ultimately amount to a disagreement with the severity of the damages award—not a meritorious defense to liability. Because Defendants admit the core

infringing conduct underlying the judgment, they fail to satisfy the meritorious-defense prong of the Rule 60(b) analysis. In any event, Plaintiff attaches recent jury verdicts obtained in comparable counterfeiting actions against similar businesses in which juries awarded substantial damages. *See* Jury Verdicts attached as **Exhibit A**.

    **III. Vacatur would prejudice GS Holistic.**

Vacatur of the default judgment would unfairly prejudice GS Holistic. Although delay alone may not constitute prejudice, courts recognize prejudice where vacatur would undermine the finality of judgment, require the non-defaulting party to relitigate issues already resolved, or permit a defendant to strategically ignore litigation obligations without consequence. As another judge in this district has explained:

> The concern is not delay standing alone, but rather that the passage of time makes it likely that evidence will be more difficult to locate now, and it would be unjust to make plaintiff start over again, especially where Defendants waited over a year to move to vacate.

*Guthrie v. Rainbow Fencing Inc.*, 349 F.R.D. 55, 71 (E.D.N.Y. 2025) (cleaned up). Moreover, "the longer a party waits before seeking relief, the more likely the opposing party is to suffer prejudice." *Henry v. Oluwole*, 108 F.4th 45, 64 (2d Cir. 2024) (quoting 10 Moore's Federal Practice § 55.82[2]).

Here, GS Holistic properly commenced this action, effected service, obtained entries of default, moved for default judgment, and secured a final judgment after substantial motion practice and expenditure of resources. Defendants admittedly had actual notice of the litigation and the pending motion for default judgment for months before judgment was entered, yet—for whatever reason—chose not to appear or defend the case. Permitting vacatur under these circumstances would reward Defendants' deliberate inaction and substantially prejudice GS Holistic by forcing it to relitigate a matter that has already proceeded to final judgment. *See id.* (noting that courts

often consider whether a defendant acted promptly to vacate the default judgment in part because delay is an indication that the default was deliberate).

### IV. Defendants' remaining arguments are without merit.

Defendants' remaining arguments fare no better and largely consist of semantic and grammatical complaints and attacks on Plaintiff's default judgment submissions that fall far short of establishing fraud, misconduct, or any other basis for vacatur under Rule 60(b)(3).

First, Defendants repeatedly accuse Plaintiff and its counsel of obtaining the judgment through "falsehoods" because certain portions of the default judgment papers used the plural term "products" rather than the singular "product." Defs.' Mem. at 3-5. This argument is meritless. The distinction between one counterfeit product and multiple counterfeit products is immaterial to the validity of the judgment and plainly does not constitute fraud, misrepresentation, or misconduct within the meaning of Rule 60(b)(3). Defendants themselves admit that they sold the counterfeit STÜNDENGLASS-branded product from their store and that additional STÜNDENGLASS-branded products were present on the premises at the time of the transaction. The notion that Plaintiff somehow procured a federal judgment through fraud because of the use of a plural noun is not a serious basis for vacatur.

Nor is there anything misleading about the photographs submitted in support of the motion for default judgment. The exhibits accurately depicted Defendants' store, the counterfeit STÜNDENGLASS-branded product purchased by the investigator, the transaction receipt, and additional related inventory present at the location. Defendants' disagreement with the weight the Court afforded that evidence is not fraud. At bottom, Defendants simply disagree with the outcome of the default judgment proceedings and attempt to recast that disagreement as litigation misconduct.

Second, Defendants' criticism of the declaration submitted by Plaintiff's counsel is equally baseless. Defendants complain that Plaintiff relied upon Attorney Anthony Verna's declaration in support of the motion for default judgment. Defs.' Mem. at 2-3. But that is precisely what this Court's Default Judgment Procedure expressly requires. The procedure mandates the filing of "[a]n attorney's declaration or affidavit setting forth the basis for entering a default judgment," including the procedural history, service details, damages calculations, and supporting evidence. Plaintiff complied with those procedures exactly as required by the Court.

Moreover, Attorney Verna's declaration was not submitted in isolation. Plaintiff also submitted a separate declaration from its CEO, documentary evidence, photographs, transaction records, affidavits of service, and supporting materials consistent with the Court's default judgment procedures. Defendants cite no authority prohibiting counsel declarations in support of default judgment motions—because none exists. Their objection therefore provides no basis whatsoever for disturbing the Court's default judgment.

Finally, to the extent Defendants also seek relief under Rule 60(b)(6), that provision applies only in "extraordinary circumstances" not addressed by the other subsections of Rule 60(b). *See Trs. of the Local 531 Pension Fund v. Am. Indus. Gases, Inc.*, 708 F. Supp. 2d 272, 274 (E.D.N.Y. 2010). Defendants barely address Rule 60(b)(6), mentioning it only in passing at the tail end of their memorandum in a skeletal and conclusory fashion. *See* Defs.' Mem. at 5. In any event, Defendants identify no extraordinary circumstances here. Their motion merely repackages the same arguments concerning alleged excusable neglect, service, fraud, and dissatisfaction with the judgment amount, all of which fall squarely within Rule 60(b)'s other subsections and none of which are sufficient to warrant vacatur.

## **Conclusion**

For all of the foregoing reasons, Defendants have failed to establish that their default was anything other than willful, failed to present a meritorious defense, and failed to demonstrate any basis warranting the extraordinary relief sought under Rule 60(b). Accordingly, GS Holistic respectfully requests that the Court deny Defendants' motion in its entirety, including Defendants' request for an interim stay of enforcement.

Respectfully submitted,

*/s/ Anthony M. Verna III*
Anthony M. Verna III
Verna Law, P.C.
80 Theodore Fremd Ave.
Rye, NY 10580
anthony@vernalaw.com
Telephone: 914-908-6757

*Attorney for the Plaintiff*

-10-